Filed: June 24, 2005

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 04-1863
(CA-03-2953-CCB)

RICARDO ANTONIO WELCH, JR.,

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

O R D E R

The court amends its opinion filed May 31, 2005, as follows:

On page 7, part IV., second paragraph, line 4 -- the word "proscribes" is corrected to read "prescribes."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RICARDO ANTONIO WELCH, JR.,
                    *Plaintiff-Appellant,*

v.                                              No. 04-1863

UNITED STATES OF AMERICA,
                    *Defendant-Appellee.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Catherine C. Blake, District Judge.
(CA-03-2953-CCB)

Argued: March 17, 2005

Decided: May 31, 2005

Before MICHAEL and DUNCAN, Circuit Judges,
and Frederick P. STAMP, Jr., United States District Judge for the
Northern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge Duncan wrote the opinion, in
which Judge Michael and Judge Stamp joined.

## COUNSEL

**ARGUED:** Todd Michael Stenerson, AKIN, GUMP, STRAUSS,
HAUER & FELD, L.L.P., Washington, D.C., for Appellant. Neil Ray
White, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON
BRIEF:** Debra A. Drake, AKIN, GUMP, STRAUSS, HAUER &

FELD, L.L.P., Washington, D.C., for Appellant. Thomas M. DiBiagio, United States Attorney, Baltimore, Maryland, for Appellee.

---

**OPINION**

DUNCAN, Circuit Judge:

Ricardo Antonio Welch, Jr. was detained for 422 days under an immigration statute that this court later determined was unconstitutional as applied to him due to its failure to provide for a bail hearing.[1] *Welch v. Ashcroft*, 293 F.3d 213 (4th Cir. 2002). Welch's successful challenge to his detention led to a court-ordered hearing at which an immigration judge released him on bail. Welch now brings this action, claiming that his detention constituted tortious false imprisonment under Maryland law, an action for which he contends the United States is liable under the Federal Tort Claims Act ("FTCA"). The district court dismissed Welch's claim for lack of subject matter jurisdiction, holding that the United States had not waived its sovereign immunity because his claim fell under the so-called "due care" exception to the FTCA. 28 U.S.C. § 2680(a). Because we agree with the district court and find that the due care exception applies to the facts of Welch's false imprisonment claim, we affirm.

I.

The material facts of this case are not in dispute. Welch is a native and citizen of Panama. At the age of ten, he entered the United States with his family and has been a permanent legal resident of this country since that time. While he was never granted citizenship, both of his parents and two of his three siblings are American citizens. Welch

---

[1]The Supreme Court subsequently rejected a constitutional challenge to the statute in another case, holding that mandatory detention of deportable aliens prior to removal proceedings is constitutionally permissible. *See Demore v. Hyung Joon Kim*, 538 U.S. 510 (2003). This decision, however, was rendered after Welch's case was completed. Thus, for purposes of resolving the issue before us, the Fourth Circuit's decision remains the final authoritative ruling.

served in the United States Navy and Naval Reserve from 1986 through 1994, when he was honorably discharged. He is now a resident of the State of Maryland, where he lives with his wife, two sons, and step-daughter, all of whom are American citizens.

In 1993, Welch was arrested after being involved in an altercation on a basketball court. He was charged with a series of state felonies stemming from the incident, including assault and weapons charges. He pled guilty to the charges in 1994 and was sentenced to five years in prison. He ultimately served three years in a Maryland state correctional facility and was released in October, 1996.

After Welch's initial plea, the United States Department of Justice ("DOJ") instituted deportation proceedings against him under two subsections of the Immigration and Naturalization Act. See 8 U.S.C. § 1251(a)(2)(A)(iii)(authorizing deportation for conviction of an "aggravated felony"); 8 U.S.C. § 1251(a)(2)(C)(authorizing deportation for unlawful possession of a firearm).[2] In August, 1997, following his release, an immigration judge ordered Welch deported to Panama pursuant to § 1227(a)(2)(A)(iii). Welch appealed the order to the Board of Immigration Appeals, and the appeal was denied on July 8, 1998. In October, 1998, the DOJ took Welch into custody and placed him in detention pending his deportation. The removal process was delayed however, as the Immigration and Naturalization Service ("INS") did not receive the necessary paperwork from the Panama Consulate in order to complete deportation proceedings.

While Welch remained in detention, on April 22, 1999, the state charges for which he had pled guilty were vacated in state court on collateral review. On that same day, Maryland entered into an agreement with Welch in which the felony charges were dropped and he instead pled guilty to six misdemeanor charges of simple assault and one misdemeanor charge of illegally wearing or carrying a handgun. The court imposed a sentence of less than one year and credited

---

[2]In 1996 Congress recodified § 241 of the Immigration and Naturalization Act, 8 U.S.C. § 1251 (1994), in substantially identical form at § 237 of the Act as amended, 8 U.S.C. § 1227 (2001). We will refer to the provisions under the new codification in the rest of the opinion.

Welch for the time served previously, which resulted in no new time in detention.

The DOJ ceased its attempt to deport Welch based upon his prior felony convictions but moved to reopen the removal proceedings on the ground that the plea to the new firearm conviction rendered him deportable under 8 U.S.C. § 1227(a)(2)(C). On October 28, 1999, the Board of Immigration Appeals granted the motion. The DOJ continued to detain Welch based upon the Immigration and Naturalization Act's mandate of such detention pending a final removal determination. *See* 8 U.S.C. § 1226(c).

While in detention, Welch filed a petition for a writ of habeas corpus with the District Court of Maryland, contending that his indefinite detention without the possibility of bail by the DOJ violated his Fifth Amendment due process rights. At the same time, he applied for naturalization as a United States citizen. The district court granted the habeas petition, holding that § 1226(c) "violate[d] Welch's substantive due process right[s] . . . to receive a bail hearing in which a judge would determine his flight risk and threat to the community." *Welch*, 101 F.Supp.2d at 356. The court ordered that the DOJ provide Welch with a bail hearing, which an immigration judge conducted on June 7, 2000. After the hearing, the judge granted Welch his release.

The DOJ appealed that decision, and on June 19, 2002, this court affirmed the district court's decision, but on slightly different grounds. *Welch*, 293 F.3d at 218-28. While declining an invitation to rule on the constitutionality of § 1226(c) in all cases, we held that the provision was unconstitutional as applied to Welch. *Id.* Following this decision, on July 15, 2002, an immigration judge granted Welch's petition to cancel his removal proceedings. The government did not appeal, thus ending the threat of deportation.

On June 4, 2002, Welch presented an administrative claim to the INS seeking damages for his unlawful imprisonment from April 22, 1999 until June 7, 2000. His administrative claim was denied on April 23, 2003.[3] On October 15, 2003, Welch filed a complaint under the

---

[3]On March 1, 2003, the INS was abolished and its functions were incorporated into the Department of Homeland Security. It was this agency that ultimately denied Welch's claim.

FTCA against the United States in the United States District Court for the District of Maryland, again alleging false imprisonment. The United States moved to dismiss under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction, alleging in part that the United States had not waived sovereign immunity under the FTCA for Welch's claim. The district court granted the motion to dismiss, and it is this decision we now review.

## II.

We review a district court's dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction de novo. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). On appeal, Welch argues that his 422-day detention by the United States constituted false imprisonment under Maryland law. He contends that the FTCA provides a waiver of sovereign immunity by the United States for such false imprisonment claims, and that the district court erred in determining that Welch was unable to bring his claim due to the due care exemption to the FTCA.

## III.

As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). All waivers of sovereign immunity must be "strictly construed . . . in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). For that reason, it is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). If the plaintiff fails to meet this burden, then the claim must be dismissed. *Medina v. United States,* 259 F.3d 220, 223 (4th Cir. 2001).

The FTCA effects a limited waiver of the United States' sovereign immunity for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The scope of this waiver is limited by a series of specific exceptions outlined in the Act, each of which is considered juris-

dictional. *Medina*, 259 F.3d at 223-24. Two such exceptions apply here, and their inter-relationship controls our analysis. Specifically, the waiver of sovereign immunity under the FTCA does not apply to:

> any claim based upon an act or omission of an employee of the Government exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The first clause of § 2680(a), the due care exception, prevents the United States from being held liable for actions of its officers undertaken while reasonably executing the mandates of a statute.

In addition to § 2680(a), § 2680(h) exempts claims for certain intentional torts, including those for false imprisonment, from the waiver of sovereign immunity. However, the statute was amended in 1974 to provide an exception to this exemption, stating that sovereign immunity *is* waived if certain intentional torts, including false imprisonment, are committed by an investigative or law enforcement officer of the United States. We have previously held that INS agents meet the criteria of an "investigative or law enforcement officer." *Medina,* 259 F.3d at 224.

Welch contends that because of § 2680(h), the due care exception of § 2680(a) does not bar his suit. He argues that § 2680(h)'s specific removal of immunity for false imprisonment claims against law enforcement officers of the United States exists independently of the § 2680(a) due care exception, and that § 2680(a) is thus not intended to apply to, or limit, § 2680(h) claims. He contends that congressional intent would be thwarted by applying the due care exemption to such claims, as the specificity of the authorization of § 2680(h) immunity waivers indicates an intent that they should control. According to Welch, then, the United States has waived its sovereign immunity for false imprisonment claims, even if the law enforcement officer exercised due care.

Unfortunately for Welch, the authority in this circuit is to the contrary. In interpreting the "discretionary function" language of the second part of § 2680(a) in *Medina*, we concluded that subsection (a) applies to intentional torts under § 2680(h). 259 F.3d at 225-26. Following the reasoning of the D.C. Circuit, we held that when Congress amended § 2680(h) in 1974, it knew the effect of § 2680(a) and must have meant for its provisions to apply. *Id.* (discussing *Gray v. Bell*, 712 F.2d 490, 507 (D.C. Cir. 1983). While the new revisions to § 2680(h) allowed intentional tort claims against law enforcement officers, *Medina* decided that the exceptions to the Act already in existence were intended to remain in effect.

As noted, our determination in *Medina* was made in the context of subsection (a)'s "discretionary function" language. However, we see no compelling reason, and Welch points to none, for treating the parallel "due care" exception differently. We therefore hold that intentional tort claims authorized by § 2680(h) must overcome the § 2680(a) due care hurdle before sovereign immunity can be deemed waived.

## IV.

Welch next argues that even if § 2680(a) applies to limit § 2680(h)'s authorized false imprisonment claims generally, the district court erred in determining that his particular claim is barred by the due care exception. We disagree.

To determine whether the due care exception bars a particular claim, we apply a two-part analysis. *See Crampon v. Stone*, 59 F.3d 1400, 1403 (D.C. Cir. 1995). First, we determine whether the statute or regulation in question specifically prescribes a course of action for an officer to follow. *Id.* Second, if a specific action is mandated, we inquire as to whether the officer exercised due care in following the dictates of that statute or regulation. If due care was exercised, sovereign immunity has not been waived. *Id.*

In this case, the DOJ detained Welch under the mandate of § 1226(c)(1)(B). This provision states that the "Attorney General shall take into custody any alien who . . . is deportable by reason of having committed an offense covered in section . . . 1227(a)(2)(C) of this

title." 8 U.S.C. § 1226(c)(1)(B). The language in this provision specifically prescribes a course of action to be followed by officers of the United States. The detention of anyone deportable due to a Section 1227(a)(2)(C) offense is mandatory; the "shall" language in the provision indicates that an individual officer cannot deviate from its enforcement. Once Welch was deemed deportable, the INS officers had no discretion in their actions. The decision to detain him was statutorily required, thus satisfying the first requirement of the due care exception.

Our second inquiry is simply whether the officers in question exercised due care in the execution of this statutorily prescribed duty. Welch does not claim that the INS officers carried out their responsibilities in an inappropriate manner, or in any way deviated from the statute's requirements. Rather, his complaint is with the officers' decision to detain him in the first instance. However, this is a complaint regarding the statute itself, not with any of the particular officers' alleged deviation from its mandate. Absent any allegation of such a deviation it cannot be said that the officers acted with anything other than due care. We therefore conclude that the prerequisites of § 2680(a) are met on these facts and that the United States' sovereign immunity is not waived.

Welch makes two arguments in response to the facial applicability of § 2680(a), neither of which is compelling. First, he contends that this court's earlier finding in that § 1226(c) was unconstitutional as applied to Welch precludes a determination that the INS agents acted in due care in executing it. Put simply, Welch contends that an unconstitutional regulation can never be said to have been executed with "due care."

This argument, however, ignores the plain language of § 2680(a). The exception states that sovereign immunity is not waived if an officer acts with "due care" in the execution of a statute or regulation "whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). The obvious purpose of the provision is to immunize the conduct of an officer from tort liability regardless of whether the statute under which he is proceeding is ultimately upheld. This is consistent with the aim of the FTCA, which is to create a remedy for certain plaintiffs who have been injured by the tortious execution of a partic-

ular law, not provide a venue in which to challenge the validity of that law. *See Dalehite v. United States*, 346 U.S. 15, 32-33 (1953). As the district court correctly noted, it is the purpose of the due care provision to "bar tests by tort action of the legality of statutes and regulations." *Borquez v. United States*, 773 F.2d 1050, 1052 (9th Cir. 1985)(internal quotation omitted). Welch identifies no violation of his constitutional rights resulting from the execution of § 1226(c) in a manner in which it was not intended. Rather, he simply argues that because the statute was later found unconstitutional as applied to him, due care could not have been used in the decision to enforce it. This argument is refuted by the plain language of the statute.

Welch's second argument fares no better. He claims that the mandatory nature of § 1226(c) prevents the utilization of any standard upon which it can be judged whether the government officials acted with due care. Welch is essentially arguing that statutes that mandate particular acts and leave no discretion in their execution may not be included within the due care exception as they leave no standard by which such care can be judged. Besides lacking a statutory basis for this conclusion, this argument is also incorrect. When a statute requires an official to take a particular action, the manner in which the act is undertaken may nevertheless be improper and thus performed without due care. For instance, the INS might have detained an individual under § 1226(c) for a crime that was not deportable, and thus its officers may have falsely imprisoned an individual by executing the statute improperly. In that instance, the claim would not be brought because of an alleged defect in the statute, but rather because of an alleged defect in how the statute has been executed. Here, however, Welch challenges the correct and proper enforcement of a mandatory statute. Such enforcement is, by its very nature, executed with due care. The mandatory nature of the enforcement does not discourage, but only reinforces, such a conclusion.

## V.

The INS officers in this case appropriately enforced the required mandate of 8 U.S.C. § 1226(c). Welch has not claimed that they acted other than with due care in its execution and thus the United States has not waived its sovereign immunity for his claim. Absent such a

waiver, the United States has not consented to be sued, and the district court's decision to dismiss the claim under Rule 12(b)(1) is

*AFFIRMED*.